HAMMOND DEVELOPMENT CORPORATION, Appellant–Defendant,

v.

Thomas McDERMOTT, Jr., Appellee–Plaintiff.

No. 45A03–0207–CV–249.

Court of Appeals of Indiana.

Feb. 19, 2003.

Randall J. Nye, Beckman, Kelly & Smith, Hammond, IN, Attorney for Appellant.

Steven J. Sersic, Kevin C. Smith, Rubino, Crosmer, Smith & Sersic, Dyer, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Hammond Development Corporation (HDC) appeals the trial court's order directing it to provide records requested by appellee-plaintiff Thomas McDermott, Jr., pursuant to the Indiana Access to Public Records Act (APRA).[1] Specifically, the HDC argues that the trial court did not have authority to order the production of documents and should have dismissed McDermott's complaint because the HDC never denied McDermott's request and fully complied by providing the documents McDermott requested. Concluding that the HDC did not deny McDermott access to the records requested and that the trial court should have dismissed McDermott's complaint, we reverse and remand this case to the trial court with instructions to dismiss McDermott's complaint.

### FACTS

The facts most favorable to the judgment reveal that in 1996, the HDC was formed to assist in the revitalization of Hammond, Indiana. The HDC's two main functions were to purchase, refurbish, and lease dilapidated buildings in Hammond and to make loans to women- and minority-owned businesses (Business Builders Program). At its inception, the organization was given $1,050,000 from the Empress Casino Corporation, a riverboat gaming concern. Beginning in 1998, the City of Hammond began contributing funds to the HDC. In 1998, the City gave only $25,000 to the HDC, but in 1999 and 2000, the City gave $770,000 and $2,340,000, respectively, to the HDC.

On March 7, 2002, McDermott—a candidate for mayor of the City of Hammond acting as a concerned taxpayer—sent a letter to Mary Kaczka, the HDC's executive director, requesting "copies of the Hammond Development Corp.'s annual budget from the years 1992 through 2002." Appellant's App. p. 17. In describing the information to be contained in the annual budgets, the letter stated that McDermott:

expect[ed] detailed accounts of all revenues received by the Hammond Development Corp. during each particular year, an identification of the source of that revenue, the date the revenue was received and the exact amount of the revenue that was received.

Appellant's App. p. 17. The letter also asserted that McDermott expected the

---

1. Ind.Code § 5–14–3–9.

same information for the HDC's expenses. Appellant's App. p. 17. Additionally, the letter requested a list of properties owned by HDC and names of HDC's directors.

In response to the letter, on March 13, 2002, HDC provided McDermott with annual budgets for 1998 through 2001, the board of directors roster, and a list of properties owned by HDC. The budgets provided, however, did not list interest income or bad debt expense associated with the Business Builders Program. McDermott made a second request on March 19, 2002, in a letter nearly identical to his March 7, 2002, correspondence. The HDC responded on March 21, 2002, stating that it had already given McDermott the documents requested that it had available.

McDermott filed his complaint against HDC on March 25, 2002, alleging a violation of Indiana Code section 5–14–3–1, the APRA, because the HDC had failed to supply all of the documents that were requested. On April 19, 2002, HDC answered the complaint, alleging that it had already provided McDermott with the information in its possession that he had requested. On June 26, 2002, a hearing was held in which Kaczka testified that the HDC had loan files in its possession that detailed the interest income and bad debt expense associated with each loan made through the Business Builders Program. However, Kaczka also stated that the HDC did not have to reveal information about the Business Builders Program loans because the recipients were private businesses and the funds for the loans came from the Empress Casino, not the City of Hammond.

On June 27, 2002, the trial court held that McDermott had identified the requested records with "reasonable particularity" and that the HDC had not provided McDermott with the information he had requested. Appellant's App. p. 3. Thus, the trial court ordered the HDC to provide McDermott with "all records requested" in the March 7, 2002 letter. Appellant's App. p. 4. HDC now appeals.

## DICSUSSION AND DECISION

### I.   Standard of Review

■   McDermott and the HDC disagree as to this court's level of review. McDermott argues that because the trial court made specific findings of fact and conclusions of law, we are to reverse only if those findings of fact and conclusions of law are clearly erroneous. Appellee's Br. p. 4 (citing Ind. T.R. 52(A)).

On the other hand, the HDC argues that we should review the trial court's decision using a de novo standard because the trial court misinterpreted the APRA. Appellant's Br. p. 10. HDC alleges that it never "denied" access to the records requested by McDermott and in fact provided him with all the information he demanded. The HDC argues that since the APRA requires a denial of a request before suit may be brought to compel disclosure—and, according to the HDC, no denial ever took place—the trial court erred by not dismissing McDermott's complaint. Appellant's Br. p. 13. Because we find that the trial court erred in its interpretation of the APRA, we employ a de novo standard. *South Bend Tribune v. South Bend Community School Corp.*, 740 N.E.2d 937, 938 (Ind.Ct.App.2000) (holding that a trial court's statutory interpretation is given no deference on review).

### II.   The Access to Public Records Act

■   In resolving the issues that are before us, we first quote the relevant portion of the APRA, Indiana Code section 5–14–3–9:

(a) A denial of disclosure by a public agency occurs when the person making the request is physically present in the

office of the agency, makes the request by telephone, or requests enhanced access to a document and:

(1) the person designated by the public agency as being responsible for public records release decisions refuses to permit inspection and copying of a public record when a request has been made; or

(2) twenty-four (24) hours elapse after any employee of the public agency refuses to permit inspection and copying of a public record when a request has been made; whichever occurs first.

(b) If a person requests by mail or by facsimile a copy or copies of a public record, a denial of disclosure does not occur until seven (7) days have elapsed from the date the public agency receives the request.

Thus, a denial occurs when a public agency "refuses to permit inspection" of the requested records after "a request has been made." Ind.Code § 5–14–3–9(a). Furthermore, a prerequisite for filing a suit under the APRA is that a person be "denied the right to inspect or copy a public record by a public agency." I.C. § 5–14–3–9(d).

In the instant case, the record shows that on March 7, 2002, McDermott asked for the HDC's budgets and expected to receive "detailed accounts of all revenues received by the Hammond Development Corp. during each particular year, an identification of the source of that revenue, the date the revenue was received and the exact amount of the revenue that was received." Appellant's App. p. 17. McDermott's letter also stated he expected to receive the same depth of information regarding the HDC's expenses. On March 21, 2002, the HDC offered to provide McDermott with its audited financial statements and Form 990 tax returns, both of which listed sources of income and expenses. On June 18, 2002, McDermott obtained more than 1,500 pages of documents relating to the HDC's financial status.

In view of the information provided to McDermott, we fail to see how the HDC did not comply with his request for budgets with "detailed accounts" of revenue and expenses. The HDC provided McDermott with its annual budgets from 1998 through 2001, the only years for which it had budgets. Appellant's Br. Addend. p. 22–26. The information was detailed, as requested by McDermott. The 2000 budget, for example, shows that the HDC received $500,000 from the Hammond Port Authority and $1,420,000 from the City of Hammond. Appellant's Br. Addend. pp. 24. In each budget, line items such as salaries, internet access, and directors' and officers' insurance are itemized. Appellant's Br. Addend. pp. 22–25. The Form 990 tax returns provided for the years 1996 through 2000 are even more detailed. Each Form 990 specifies expenses, such as Kaczka's yearly compensation, and lists the name and address of contributors. Defendant's Ex. 7.

We reiterate that a "denial" under the APRA occurs whenever a public agency "refuses to permit inspection and copying of a public record when a request has been made." I.C. § 5–14–3–9(a)(1). Here, it is apparent that the trial court misinterpreted the APRA by finding that such acquiescence to McDermott's request constituted a "denial" under the APRA. The HDC did not "refuse to permit inspection" of its records and in fact provided McDermott with the information he requested. Consequently, no cause of action existed, and McDermott's complaint should have been dismissed.

McDermott, however, goes on to argue that a finding for the HDC would result in agencies "turn[ing] over a few records and withhold[ing] others without ever using the word 'deny.'" Appellee's Br. p. 5. While

there may be an instance where turning over selected records may constitute an effective denial under the APRA, such is not the case here. McDermott was given documents detailing exactly what he requested. In sum, no "denial," as defined by the APRA, occurred.

We acknowledge that Kaczka was somewhat evasive about the Business Builders Program at several points during her testimony. She first justified not having given McDermott information on the program because the borrowers were private businesses to whom the HDC could be liable for divulging business information. Appellant's App. p. 94. Later, however, Kaczka stated that the HDC did not have to reveal Business Builders Program information because the funds for the program came "directly from the Empress Casino." Appellant's App. p. 101. Notwithstanding such perceived inconsistencies, the record demonstrates that McDermott simply failed to request access to the Business Builders Program loan files. Instead, McDermott requested budgets and income and expense details, which the HDC provided. As a consequence, we need not reach the question of whether the Business Builders Program loan files are records that must be disclosed by the HDC under the APRA.

## CONCLUSION

In light of our disposition of the issues set forth above, we conclude that the trial court erroneously held that the HDC denied McDermott's APRA request. Consequently, the trial court erred in refusing to dismiss McDermott's complaint.

Reversed and remanded.

RILEY, J., and MATHIAS, J., concur.